IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG

UNITED STATES OF AMERICA,

      Plaintiff,

v.                            Crim. Action No. 1:20-CR-38-1
                                      (Kleeh)

TYREESE MARSH,

      Defendant.

**ORDER ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION [ECF NO. 71], DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE [ECF NO. 52], AND OVERRULING DEFENDANT'S OBJECTIONS [ECF NO. 77]**

Pending before the Court is Defendant's Motion to Suppress Evidence [ECF No. 52], Magistrate Judge Aloi's Report and Recommendation related to the same [ECF No. 71] and Defendant's Objections thereto [ECF No. 77]. The issues raised in each are ripe for decision and the Court addresses each in turn.

## I.   Procedural History

The defendant, Tyreese Marsh ("Mr. Marsh"), was indicted in a five-count Indictment charging him with (1) Conspiracy to Possess with Intent to Distribute Controlled Substances, in violation of Title 21, United States Code, Sections 846, 841(b)(1)(A)(viii), and 841(b)(1)(C); (2) Possession With the Intent to Distribute 50 Grams or More of Methamphetamine, in violation of Title 18, United States Code, Section 2, and Title 21, United States Code, Sections

**ORDER ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION [ECF NO. 71], DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE [ECF NO. 52], AND OVERRULING DEFENDANT'S OBJECTIONS [ECF NO. 77]**

841(a)(1) and 841(b)(1)(A)(viii); (3) Possession With the Intent to Distribute Heroin, in violation of Title 18, United States Code, Section 2 and Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C); (4) Possession With the Intent to Distribute 28 Grams or More of Cocaine Base, in violation of Title 18, United States Code, Section 2, and Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B)(iii); and (5) Possession of Firearm in Furtherance of a Drug Trafficking Crime, in violation of Title 18, United States Code, Section 924(c)(1)(A). [ECF No. 1]. Counts One through Four in the Indictment were also alleged against Defendants Dejuan Bernard Williams and Regano Harley Jones. [ECF No. 1]. A forfeiture allegation is included in the Indictment. [ECF No. 1].

Mr. Marsh filed *Defendant's Motion and Memorandum of Law to Suppress Evidence Seized as a Result of Traffic Stop and any Evidence Seized as a Result of Subsequently Obtained Search Warrants* [ECF No. 52], on October 13, 2020. By Order dated October 14, 2020, United States District Judge Thomas S. Kleeh referred the motion to Magistrate Judge Michael J. Aloi for conducting a hearing and submitting a report and recommendation as to disposition of the motion. [ECF No. 53]. Thereafter, the Court received Defendant's Supplement to Previously Filed Motion, filed on October 20, 2020 [ECF No. 58], the Government's Response in Opposition to Defendant's Motion, filed on October 21, 2020 [ECF

ORDER ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
[ECF NO. 71], DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE
[ECF NO. 52], AND OVERRULING DEFENDANT'S OBJECTIONS [ECF NO. 77]

No. 60], and Defendant's Supplemental Memorandum of Law, filed on October 27, 2020 [ECF No. 70].

The Magistrate Judge conducted a hearing on Defendant's Motion on October 23, 2020, at which time the Court heard witness testimony, accepted exhibits into evidence, and heard the argument of counsel for both Defendant and the Government. On October 29, 2020, the Magistrate Judge issued a thorough Report and Recommendation ("R&R") [ECF No. 71], recommending that Defendant's Motion [ECF No. 52], be denied. The parties were given five (5) days to file specific written objections to the R&R. Mr. Marsh filed objections to the R&R on November 3, 2020. [ECF No. 77].

Mr. Marsh filed a *Motion to Continue Pretrial Hearing, Trial Date and Other Deadlines Set by the First Amended Scheduling Order*. [ECF No. 78]. The Court granted the Motion and continued the pre-trial conference to 10:00 a.m. on Friday, February 12, 2021, at the Clarksburg, West Virginia point of holding court. Jury selection will begin at 9:30 a.m. on March 3, 2021, at the Clarksburg, West Virginia point of holding court with trial commencing thereafter. [ECF No. 81].

## II.  Applicable Law and Legal Standard

Pursuant to 28 U.S.C. § 636(b)(1)(B), a magistrate judge may be designated by a district court to consider motions to suppress

3

**ORDER ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION [ECF NO. 71], DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE [ECF NO. 52], AND OVERRULING DEFENDANT'S OBJECTIONS [ECF NO. 77]**

evidence and statements as unconstitutionally obtained. After the magistrate judge has considered such a motion, the judge must submit "proposed findings of fact and recommendations for the disposition." Camry v. Davis, 718 F.2d 198, 199 (4th Cir. 1983) (quotations omitted). Parties are entitled to file written objections to the findings and recommendations of the magistrate judge, and if a party chooses to object within the allotted period, the district court shall make a de novo review of the findings and recommendations objected to. Id. and 28 U.S.C. § 636(b)(1)(C). Any findings to which no party objects are upheld by the district court unless "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(C).

Defendant filed objections to the magistrate judge's R&R concerning the motion to suppress, which largely reiterated his previous arguments. [ECF. No. 77]. Mr. Marsh argues in his objections that the magistrate judge erroneously concluded that (1) Lt. Clifton's first stop of the Jeep was reasonable and lawful, (2) the doctrine of attenuation rendered the evidence admissible, and (3) the "good-faith" exception to the exclusionary rule applied. Mr. Marsh also included argument that the pacing technique used by Lt. Clifton was not a reasonably accurate estimate of the Jeep's speed and attached a "pacing formula diagram" in support of

ORDER ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
[ECF NO. 71], DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE
[ECF NO. 52], AND OVERRULING DEFENDANT'S OBJECTIONS [ECF NO. 77]

this notion. All findings challenged by these objections will be reviewed de novo. 28 U.S.C. § 636(b)(1).

The magistrate judge noted the well-stablished principle that the Fourth Amendment provides "[t]he right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . ." U.S. Const. Amend. IV. The Supreme Court of the United States has further held that warrantless seizures are "per se unreasonable under the Fourth Amendment, subject to only a few specifically established and well delineated exceptions." Katz v. United States, 389 U.S. 347, 357 (1967). One such exception is the investigative stop, which is also referred to as a Terry stop. Terry v. Ohio, 392 U.S. 1 (1968). A Terry stop has been held to be constitutional when the officer's action is supported by an articulable, reasonable suspicion that the person seized had engaged in criminal activity. United States v. Sokolov, 490 U.S. 1, 7 (1989). A brief detention for investigative purposes is reasonable if an officer "observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot." Terry, 392 U.S. at 30; see also Turmon v. Jordan, 405 F.3d 202, 205 (4th Cir. 2005).

To determine whether reasonable suspicion exists, courts consider "the 'totality of the circumstances' to determine if the

**ORDER ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION [ECF NO. 71], DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE [ECF NO. 52], AND OVERRULING DEFENDANT'S OBJECTIONS [ECF NO. 77]**

officer had a 'particularized and objective basis' for believing that the detained suspect might be armed and dangerous." United States v. George, 732 F.3d 296, 299 (4th Cir. 2013), cert. denied, 134 S.Ct. 1530 (2014) (citations omitted). "A host of factors can contribute to a basis for reasonable suspicion, including the context of the stop, the crime rate in the area, and the nervous or evasive behavior on the suspect." Id. (citing Illinois v. Wardlow, 528 U.S. 119, 124 (2000)). Multiple factors may together "create a reasonable suspicion even where each factor, taken alone, would be insufficient." Id. at 300 (citing United States v. Branch, 537 F.3d 328, 339 (4th Cir. 2008)). An individual's presence in a high-crime area is one factor that "carries no weight standing alone" and "may be considered along with more particularized factors to support a reasonable suspicion." United States v. Sprinkle, 106 F.3d 613, 617 (4th Cir. 1997). Other factors include lateness of the hour and unusual behavior. See United States v. Smith, 396 F.3d 579, 587 (4th Cir. 2005); United States v. Slocumb, 804 F.3d 677, 682–83 (4th Cir. 2015).

Considering this framework, the record elicited during the hearing and counsel's arguments, Magistrate Judge Aloi recommended this Court deny Defendant's motion.

**ORDER ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION [ECF NO. 71], DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE [ECF NO. 52], AND OVERRULING DEFENDANT'S OBJECTIONS [ECF NO. 77]**

## III. <u>Discussion</u>

The facts at issue and a summary of the testimony of Lt. Clifton, Chief Guerrieri, and Ptlm. Streyle are set forth in detail in the R&R [ECF No. 71 at 2-6]. No specific objections to those factual findings have been made and those facts will not be repeated here. Mr. Marsh contends that all evidence flowing from the first traffic stop on October 11, 2019, initiated by White Hall PD Officer, Lt. Clifton, must be suppressed at trial because Lt. Clifton lacked probable cause to stop the vehicle in which Mr. Marsh was a passenger based upon "pacing", and any evidence obtained following the illegal stop should be suppressed as "fruits of the poisonous tree". The Government argues that the officer's pacing technique was lawful and not flawed, and even if the pacing technique was flawed, there is sufficient "attenuation" based on the facts for a subsequent and lawful search and seizure of incriminating evidence.

### A.   Reasonable Suspicion – Initial Traffic Stop

Considering the totality of the circumstances, the Court finds that Lt. Clifton had reasonable suspicion to initiate the traffic stop of the 2019 Jeep in which Mr. Marsh was a passenger because he paced the speed of the Jeep and determined its traveling speed of 52 mph in a 40-mph limit. <u>United States v. Hassan El</u>, 5

**ORDER ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION [ECF NO. 71], DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE [ECF NO. 52], AND OVERRULING DEFENDANT'S OBJECTIONS [ECF NO. 77]**

F.3d 726, 730 (4th Cir. 1993); see also United States v. Whren, 517 U.S. 806, 810 (1996). The Jeep's speed was in violation of West Virginia Code § 17C-6-1; thus, Lt. Clifton had probable cause to stop the vehicle.

Importantly, a law enforcement officer is permitted to stop a vehicle when the officer observes a vehicle violating a traffic law. See United States v. Ortiz, 669 F.3d 439, 444 (4th Cir. 2012); see also United States v. Palmer, 820 F.3d 640, 649 (4th Cir. 2016) (stating a traffic stop is reasonable at the outset "whenever it is lawful for police to detain an automobile and its occupants pending inquiry into a vehicular violation. Without question, such a violation may include failure to comply with traffic laws.") (internal citation and quotation omitted). Observing a traffic violation provides sufficient justification for an officer to detain the vehicle for as long as it takes for the officer to perform a routine traffic stop. United States v. Branch, 537 F.3d 328, 335 (4th Cir. 2008).

While Mr. Marsh argues that this stop was unlawful due to Lt. Clifton's technique of "pacing" being an unreliable means of determining a vehicle's speed, this Court concurs with the magistrate judge's finding that Lt. Clifton appeared thorough and credible, and that his testimony regarding the pacing technique

ORDER ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
[ECF NO. 71], DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE
[ECF NO. 52], AND OVERRULING DEFENDANT'S OBJECTIONS [ECF NO. 77]

shows that he used this technique in an accurate, reliable, and customary fashion.

Lt. Clifton testified that upon exiting the Red Roof Inn parking lot in Marion County, West Virginia, to continue patrolling, he was behind a Jeep Cherokee with a Michigan state registration number. The two vehicles came to a red traffic signal, and upon the traffic light turning green, the Jeep took off through the light quickly. Lt. Clifton followed the vehicle, began the pace setting while maintaining a proper distance behind the Jeep. Lt. Clifton testified that pace setting, having received training on that particular technique in a radar certification course, is the act of using the officer's cruiser as the pace vehicle while adjusting speed and maintaining a constant distance behind the target vehicle to determine the target vehicle's speed based on the officer's cruiser's speedometer.

Lt. Clifton testified that he traveled behind the Jeep while pacing its speed for approximately 1/8 mile. While maintaining a proper distance behind the Jeep, Lt. Clifton's digital speedometer read 52 mph on the display. Upon this information, Lt. Clifton decided to initiate the traffic stop. Lt. Clifton indicated that there was nothing about road, weather, traffic, or other conditions which would have rendered the pacing technique inaccurate. Further, Lt. Clifton testified that he has been employing that

ORDER ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
[ECF NO. 71], DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE
[ECF NO. 52], AND OVERRULING DEFENDANT'S OBJECTIONS [ECF NO. 77]

technique for several years and utilizes the technique on nearly a daily basis

Mr. Marsh argues that states such as Pennsylvania, Florida, and Virginia have codified requirements for implementing the pacing technique. [ECF No. 77 at 8-9]. While the Court acknowledges and appreciates the information from other states regarding the pacing technique, here, this Court, being bound by the United States Court of Appeals for the Fourth Circuit precedent, finds that the pacing technique employed by Lt. Clifton supports a constitutionally sound initial traffic stop. Further, the Court recognizes that neighboring states to West Virginia may have codified policies regarding an officer's restriction or requirement in pacing vehicles; however, the parties provided no authority establishing that West Virginia or the White Hall Police Department has a policy actively restricting officers from implementing the pacing technique. Likewise, the Court finds no binding precedent declaring the practice per se violative of the Fourth Amendment. While Mr. Marsh also argues the reliability of the pacing technique, the Court notes that Lt. Clifton employed a customary technique here, and that this matter does not present a scenario where Lt. Clifton was visually "guessing" the Jeep's speed. See United States v. Sowards, 690 F.3d 583 (4th Cir. 2012) (reversing district court's denial of a motion to suppress evidence

**ORDER ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION [ECF NO. 71], DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE [ECF NO. 52], AND OVERRULING DEFENDANT'S OBJECTIONS [ECF NO. 77]**

obtained from a traffic stop where the officer initiated the stop by visually guessing the vehicle's speed without employing any technique whatsoever, including radar or the pacing method). Lt. Clifton testified to observing the Jeep's speed of 52 mph in a 40-mph zone, for approximately 1/8 mile, which is an objective and tangible measurement for an objective and tangible distance observed by the officer.

While Mr. Marsh disputes the reliability of Lt. Clifton's pacing technique, and therefore arguing that the initial stop of the Jeep was unlawful under the totality of the circumstances, the testimony here illustrates that Lt. Clifton paced the vehicle in an accurate manner and with the required experience necessary in his field in order to reach the conclusion that the Jeep's speed was 52 mph, 12 mph over the speed limit. Therefore, the Court **UPHOLDS** the magistrate judge's findings that reasonable, articulable suspicion existed for the initial stop of the Jeep of which Mr. Marsh was a passenger. Accordingly, the Court **ADOPTS** the Report and Recommendation [ECF No. 71] on this issue over Defendant's objections and **DENIES** Defendant's Motion to Suppress [ECF No. 52] as Mr. Marsh's constitutional rights have not been violated. The Court **OVERRULES** Defendant's Objections on this point as well [ECF No. 77].

ORDER ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
[ECF NO. 71], DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE
[ECF NO. 52], AND OVERRULING DEFENDANT'S OBJECTIONS [ECF NO. 77]

###### B.    Attenuation

Mr. Marsh argues that there was not sufficient attenuation between the initial traffic stop and the acquisition of evidence, and therefore, he moves to suppress that evidence.  Even if the first traffic stop of the Jeep was violative of constitutional constraints, which it was not, this Court finds that the doctrine of attenuation renders the challenged evidence admissible on a separate, independent basis. Utah v. Strieff, -- U.S. --, 136 S.Ct. 2056, 2061 (2016).

Under the exclusionary rule, a court should exclude evidence obtained by law enforcement's unlawful arrest or search. See Mapp v. Ohio, 367 U.S. 643 (1961). Relatedly, however, a court should suppress evidence in a criminal matter "only . . . where its deterrence benefits of exclusion outweigh its substantial social costs." Hudson v. Michigan, 547 U.S. 586, 591 (2006) (citations and quotations omitted). One exception to the exclusionary rule is the attenuation doctrine, which provides that "[e]vidence is admissible when the connection between unconstitutional police conduct and the evidence is remote or has been interrupted by some intervening circumstance, so that 'the interest protected by the constitutional guarantee that has been violated would not be served by suppression of the evidence obtained.'" Utah v. Strieff, -- U.S. --, 136 S.Ct. at 2061 (internal citation omitted).

**ORDER ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
[ECF NO. 71], DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE
[ECF NO. 52], AND OVERRULING DEFENDANT'S OBJECTIONS [ECF NO. 77]**

The three-prong test from Utah v. Strieff guides this Court
in application of the attenuation doctrine.

> First, we look to the "temporal proximity" between the
> unconstitutional conduct and the discovery of evidence
> to determine how closely the discovery of evidence
> followed the unconstitutional search. Second, we
> consider "the presence of intervening circumstances."
> Third . . . we examine "the purpose and flagrancy of the
> official misconduct."

Strieff, 136 S. Ct. at 2062 (internal citations omitted) (quoting
Brown v. Illinois, 422 U.S. 590 (1975)); see also United States v.
McKinnon, 92 F.3d 244, 247 (4th Cir. 1996).

Upon de novo review, this Court agrees with the magistrate
judge in that even if the initial traffic stop of the Jeep was not
lawful, the doctrine of attenuation applies to allow admission of
(i) evidence obtained during pursuit of the Jeep once it fled the
initial stop and (ii) evidence obtained, once the Jeep ultimately
stopped, from a search of the Jeep and its occupants. It is clear
that the Jeep fleeing from the traffic stop constitutes an
intervening circumstance that "break[s] the causal chain between
the unlawful stop and the discovery of drug-related evidence."
Strieff, 136 S.Ct. at 2061.

**1. Temporal proximity**

Typically, a "short time interval counsels in favor of
suppression." Id. at 2062. However, as correctly stated by the
magistrate judge, although only a few minutes passed between the

13

first stop and the search of the Jeep passengers, and hours passed between the initial stop and the search of the Jeep under the warrant, the record before the Court demonstrates a clear shift in circumstances which weighs in favor of admitting the evidence which Mr. Marsh moves to suppress.

### 2. Intervening circumstances

The events on October 11, 2019, clearly show a sufficient intervening event which supports denial of the motion on the separate, independent attenuation basis. Subsequent to the initial stop, Mr. Marsh and other occupants of the Jeep committed new and independent criminal violations that gave officers cause to stop and detain them.

First, Ms. Jones, the driver of the Jeep, fled from the initial traffic stop before the vehicle was searched and when Ptlm. Streyle and the K-9 unit arrived on scene. Ms. Jones' flight involved a high-speed chase on I-79.[1] Second, Mr. Marsh threw a shoebox out of the Jeep's window during the flight. Officers recovered that shoebox on the interstate and found a substantial amount of methamphetamine, cocaine base, and heroin/fentanyl.[2]

---

[1] This alleged conduct may constitute violations of W. Va. Code § 61-5-17(e) for Fleeing in a Vehicle and W. Va. Code § 61-5-17(f) for Fleeing in a Vehicle with Reckless Indifference to the Safety of Others.

[2] The possession allegation of these controlled substances constitutes alleged violations of W. Va. Code § 60A-4-401(a)(1)

**ORDER ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
[ECF NO. 71], DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE
[ECF NO. 52], AND OVERRULING DEFENDANT'S OBJECTIONS [ECF NO. 77]**

Finally, Mr. Marsh admitted to being in possession of a .380 Ruger pistol.[3] Based upon these alleged criminal violations, officers were justified in detaining Mr. Marsh along with the others and searching the vehicle. Thus, the new alleged criminal conduct committed by Mr. Marsh and his co-defendants were intervening circumstances that weigh heavily toward application of the attenuation doctrine and admissibility of the evidence.

This Court certainly understands <u>Strieff</u>'s holding that the intervening act is not necessarily limited to actions of the defendant. "The attenuation doctrine evaluates the causal link between the government's unlawful act and the discovery of evidence, which often has nothing to do with a defendant's actions. And the logic of our prior attenuation cases is not limited to independent acts by the defendant." <u>Id</u>. at 2061. Here, however, the intervening act is an independent act of the defendants.

### 3. <u>Purpose and Flagrancy</u>

The third prong under the attenuation doctrine test is to examine the "purpose and flagrancy" of the officer with the

---

and (2) for Possession of a Controlled Substance with Intent to Deliver, as well as 21 U.S.C. 841(a)(1) and (b)(1)(A)(viii), (b)(1)(B)(iii), and (b)(1)(C) for Possession of a Controlled Substance with Intent to Distribute.

[3] The gun evidence coupled with the drugs he threw from the vehicle and the United States currency found in his possession, amounted to an alleged violation of 18 U.S.C. § 924(c)(1)(A), Possession of a Firearm in Furtherance of a Drug Trafficking Crime.

ORDER ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
[ECF NO. 71], DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE
[ECF NO. 52], AND OVERRULING DEFENDANT'S OBJECTIONS [ECF NO. 77]

resolution of deterring police misconduct. Strieff, 136 S.Ct. at 2063. "The exclusionary rule exists to deter police misconduct." Id. (citing Davis v. United States, 564 U.S. 229, 236-37 (2011)). Here, as discussed above, Lt. Clifton observed the Jeep speeding and initiated a traffic stop based on that determination. The purpose of the traffic stop – based on the record before the Court – is far from improper. Instead, it is one of the most frequently sanctioned categories of warrantless detentions.[4]  Even if the Court were to reject the pacing technique at issue, the law enforcement conduct throughout this case is hardly the type that requires deterrence through the extreme sanction of excluding the evidence recovered.

For the reasons stated herein, the Court **ADOPTS** the Report and Recommendation [ECF No. 71] on this point as well, **DENIES** Defendant's Motion to Suppress [ECF No. 52], and **OVERRULES** Defendant's Objections on this issue [ECF No. 77].

---

[4] See Martinez v. Village of Mount Prospect, 92 F.Supp.2d 780, 783 (N.D. Ill. 2000) (stating that many law-abiding citizens' only contact with the criminal justice system is via interaction with the police, predominantly during traffic stops); see also Petition for Writ of Certiorari, Illinois v. Derrick A. Cummings, 2014 WL 4145275, *1, *13 (2014) ("Millions of traffic stops occur throughout the country annually. In Illinois alone, in 2012, there were 2,132,006 traffic stops. Moreover, these stops represent a majority of the interactions between citizens and police. According to recently available data from the Bureau of Justice Statistics, in 2008, over fifty-nine percent of the more than forty million United States residents who interacted with police did so due to traffic stops.") (internal citations omitted).

ORDER ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
[ECF NO. 71], DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE
[ECF NO. 52], AND OVERRULING DEFENDANT'S OBJECTIONS [ECF NO. 77]

### C. Good-Faith Exception

Mr. Marsh argues that the "good-faith exception" does not apply to his case. It has been widely held that the exclusionary rule generally renders inadmissible evidence obtained during an unlawful search. See Mapp, 367 U.S. 643. Another exception to the Mapp v. Ohio exclusionary rule is the "good faith exception" which "allows courts to introduce evidence obtained in violation of the Constitution but in reasonable reliance on a defective warrant." United States v. Seerden, 916 F.3d 360, 366-67 (4th Cir. 2019), as amended (Feb. 21, 2019) (citing United States v. Leon, 468 U.S. 897, 905 (1984). "[W]hen an officer's belief in the existence of probable cause is objectively reasonable, he or she has no reason to second guess the magistrate's decision to issue a warrant, and acts in good faith when executing the search." United States v. Thomas, 908 F.3d 68, 73 (4th Cir. 2018).

This Leon good-faith exception is inapplicable in certain circumstances:

> (1) where a magistrate issues a warrant based on a deliberately or recklessly false affidavit, (2) where a magistrate lacks neutrality and detachment, (3) where a warrant is based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable, (4) where a warrant is so facially deficient that a reasonable officer could not believe it was valid, and (5) where police recklessly maintain or knowingly enter false information into a warrant database to enable a future arrest.

ORDER ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
[ECF NO. 71], DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE
[ECF NO. 52], AND OVERRULING DEFENDANT'S OBJECTIONS [ECF NO. 77]

*Id.* (citations and quotations omitted). If any of these five (5) circumstances exist, the evidence obtained "pursuant to the deficient warrant must be excluded from trial." *United States v. Andrews*, 577 F.3d 231, 236 (4th Cir. 2009). In *United States v. Mowatt*, the Court held that "[t]he *Leon* exception [did] not apply . . . because *Leon* only prohibits penalizing officers for their good-faith reliance on magistrates' probable cause determinations." 513 F.3d 395, 405 (4th Cir. 2008) (abrogated by *Kentucky v. King*, 563 U.S. 452 (2011)). Instead, the *Mowatt* Court found that the exclusionary rule applies, and "operates to penalize the officers for their violation of Mowatt's rights *that preceded the magistrate's involvement*." *Id.* (emphasis in original).

Mr. Marsh, in his reliance on *Mowatt* in his objections, argues that because the search warrant for the Jeep was obtained from the magistrate judge based upon evidence that was the product of an illegal search or seizure, the warrant itself was "fruits of the poisonous tree," and therefore, renders the good-faith exception inapplicable. The Government argues that even if the initial stop of the Jeep was without a reasonable articulable suspicion or probable cause, the evidence later obtained by the search warrant was done so in good faith. The Court agrees.

Here, unlike in *Mowatt*, the good-faith exception applies because Lt. Clifton believed in his probable cause determination

**ORDER ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION [ECF NO. 71], DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE [ECF NO. 52], AND OVERRULING DEFENDANT'S OBJECTIONS [ECF NO. 77]**

based upon the Jeep's speed, which led to the initial stop. Regardless, before the K-9 could be deployed upon the detection of a marijuana smell, the Jeep then fled onto Interstate 79 South, leading the officers on a high-speed chase, during which Mr. Marsh threw a shoebox of controlled substances out the window. Even if the initial stop was unlawful, which this Court believes it was not, the doctrine of attenuation applies and supports SA Hanson's application to the federal magistrate judge for the search warrant for the Jeep.

Nothing in the record suggests circumstances (1) through (5) from Leon exist.  In utilizing information gained by the White Hall Police Department and Drug Enforcement Administration officers, federal authorities from the DEA obtained a search warrant to search the Jeep. Even if the information provided to SA Hanson by Lt. Clifton was inaccurate regarding the moving violation by the Jeep, the agents who executed the search warrant after obtaining it from the federal magistrate judge upon application and affidavit acted in good faith, and the Leon good-faith exception applies.

### D.   Abandoned Property

Finally, the Government – albeit briefly – argues Mr. Marsh abandoned the property and simultaneously any privacy interest in

**ORDER ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION [ECF NO. 71], DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE [ECF NO. 52], AND OVERRULING DEFENDANT'S OBJECTIONS [ECF NO. 77]**

the shoebox he discarded from the Jeep while it evaded law enforcement on the interstate.  Of course, the shoebox contained a large amount of controlled substances – which Mr. Marsh seeks to exclude from evidence with the instant motion.  The Court is hard pressed to conjure a scenario where an individual more clearly abandons any interest or expectation of privacy in property than casting the chattel out of the window of a moving vehicle onto a well-traveled public roadway.  "When a person voluntarily abandons his privacy interest in property, his subjective expectation of privacy becomes unreasonable, and he is precluded from seeking to suppress evidence seized from it."  United States v. Stevenson, 396 F.3d 538, 546 (4th Cir. 2005) (citation omitted); see also United States v. Haynie, 637 F.2d 227, 237 (4th Cir. 1980) ("[T]he proper test for abandonment is not whether all formal property rights have been relinquished, but whether the complaining party retains a reasonable expectation of privacy in the [property] alleged to be abandoned.").  Mr. Marsh's abandonment of the property at issue constitutes a separate and independent basis by which the evidence discovered in that shoebox may be admitted.

Therefore, the Court **ADOPTS** the Report and Recommendation [ECF No. 71] on this issue, **DENIES** Defendant's Motion to Suppress [ECF No. 52], and **OVERRULES** Defendant's Objections on this point [ECF No. 77].

**ORDER ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION [ECF NO. 71], DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE [ECF NO. 52], AND OVERRULING DEFENDANT'S OBJECTIONS [ECF NO. 77]**

## IV.  <u>Conclusion</u>

For the reasons stated herein, the Court:

- **ADOPTS** the magistrate judge's Report and Recommendation in its entirety [ECF No. 71];

- **DENIES** Defendant's Motion to Suppress Evidence [ECF No. 52]; and

- **OVERRULES** Defendant's Objections [ECF No. 77] to the Report and Recommendation.

It is so **ORDERED**.

The Court directs the Clerk to transmit copies of this order to all counsel of record.

DATED: February 9, 2021

<u>/s/</u> Thomas S. Kleeh
THOMAS S. KLEEH
UNITED STATES DISTRICT JUDGE